UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-28-CVE |
| | ) | |
| HUGO ALBERTO GUTIERREZ, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is defendant's Motion to Suppress Search of Residence and All Evidence Obtained from the Seizure (Dkt. # 17). Defendant Hugo Alberto Gutierrez ("Gutierrez") asks the Court to suppress evidence seized during a search of 1217 N. Rockford Avenue, Tulsa, Oklahoma ("1217 N. Rockford") on January 4, 2008.

**I.**

The Tulsa Police Department ("TPD") was conducting surveillance of 1217 N. Rockford in December 2007 and into January 2008, and TPD Corporal H.R. Wells ("Wells") was supervising the investigation. During the period of surveillance, police saw Gutierrez enter the house on several occasions by using a key to unlock the front door. Within 72 hours prior to December 28, 2007, a confidential informant ("CI") contacted Detective J.K. Gray ("Gray") and told Gray that a Hispanic male was selling marijuana from the house. Gray set up a controlled buy with the CI. Gray provided the CI money and told the CI to purchase marijuana with the money at 1217 N. Rockford. The buy proceeded as planned, and the CI purchased marijuana from a Hispanic male at 1217 N.

Rockford. The United States asserts that two other informants contacted Gray about a Hispanic male selling marijuana from this address.

On January 4, 2008, Gutierrez was driving home when he was stopped by TPD Officers Kaiser, Hill,[1] and Wells approximately two blocks from his home. Police initiated a traffic stop because Gutierrez failed to signal a turn and he was not wearing a seat belt. Kaiser asked Gutierrez to produce a driver's license and proof of insurance, but he was unable to produce either. Gutierrez admits that he did not possess a driver's license or proof of insurance. Dkt. # 17, at 2. Kaiser placed Gutierrez under arrest for traffic violations and conducted a pat down. Kaiser did not find any contraband on Gutierrez, but he did recover a large bundle of cash containing approximately $10,000 and a smaller bundle of $786. Gutierrez claimed that he won the money at a casino. He also stated that he lived a 1221 N. Rockford Ave rather than 1217 N. Rockford. Gutierrez claimed that his cousin rented 1217 N. Rockford, but he had a key because his cousin would be gone for long periods of time.

Gutierrez claims the officers accompanied him to his residence at 1221 N. Rockford and asked for consent to search his home. Gutierrez alleges that he consented to the search, but police did not find any evidence of illegal activity during the search.[2] Police had a search warrant for 1217 N. Rockford, which was located next door to Gutierrez's residence. The warrant specifically

---

[1] The full names of Kaiser and Hill are not provided in the briefing or the attached exhibits.

[2] The United States disputes Gutierrez's rendition of the facts on this issue, because it claims that police did not search or ask to search Gutierrez's residence at 1221 N. Rockford. For purposes of ruling on defendant's motion to suppress, it is not necessary to resolve this factual dispute.

permitted police to seize "marijuana, fruits, instrumentalities, monies, records and proof of residency." Dkt. # 18-2, at 37. The place to be searched was described as:

> A SINGLE STORY, SINGLE FAMILY RESIDENCE, LOCATED IN THE 1200 BLOCK OF NORTH ROCKFORD AVENUE. THE RESIDENCE IS THE SECOND RESIDENCE NORTH OF EAST MARSHALL STREET, ON THE EAST SIDE OF NORTH ROCKFORD AVENUE. THE RESIDENCE IS CONSTRUCTED OF WHITE SIDING, MAROON WOOD TRIM, AND A GREY COMPOSITION ROOF. THE FRONT DOOR OF THE RESIDENCE IS WHITE IN COLOR, COVERED BY A STORM DOOR, AND FACES WEST. THE NUMBERS "1217" APPEAR IN BLACK, RUNNING VERTICAL ON THE FRONT PORCH POST TO THE SOUTH OF THE FRONT DOOR. THIS RESIDENCE IS MORE COMMONLY KNOWN AS <u>1217 NORTH ROCKFORD AVENUE</u>, CITY OF TULSA, TULSA COUNTY, STATE OF OKLAHOMA.

<u>Id</u>. (emphasis added). Gutierrez alleged that his cousin rented the 1217 N. Rockford residence, but that his cousin was out of town. However, Gutierrez had a key to the residence, but he claimed that he did not have permission to open the house for anyone. At the suppression hearing, defendant stipulated that he did not own, rent, or reside in the house located at 1217 N. Rockford. Defendant also proffered the testimony of Guadalupe Ariza, the owner and landlord of 1217 N. Rockford, who would testify that defendant did not rent 1217 N. Rockford.

Gutierrez claims that he unlocked his cousin's house after police "demanded" that open the residence for them, and he was forced to sit on the floor of the house during the search. Dkt. # 17, at 5. He alleges that he did not voluntarily consent to a search of the subject residence, because police obtained his consent by threatening to search the house based on an invalid warrant. <u>Id</u>. (consent was "obtained by acquiescence to a claim by officers of lawful authority" but police allegedly lacked lawful authority due to the invalidity of the warrant).

The government offers a different account of the search of 1217 N. Rockford. It claims that Gutierrez provided a key to Kaiser, but Kaiser could not open the door. Gutierrez stated that the key

3

had to be held in a certain way to unlock the door, and he offered to open the door for Kaiser. Kaiser handed the key to Gutierrez and he opened the door without any difficulty. As Kaiser entered the residence but before any contraband was found, Gutierrez bent over in pain and yelled "f _ _ _! f _ _ _! f _ _ _." Dkt. # 20, at 5. Kaiser asked Gutierrez if anything was wrong, and Gutierrez said "I'm f _ _ _ _ _." Id. TPD officers seized 143 ounces of marijuana, 8 ounces of methamphetamine, over $83,000 in United States currency, drug paraphernalia, and a notebook with notations of drug sales.

**II.**

Defendant has filed a motion to suppress evidence seized during the January 4, 2008 search of 1217 N. Rockford on the grounds that the search warrant was invalid and he did not voluntarily consent to the search. The government responds that warrant described the place to be search and the items to be seized with sufficient particularity, and the warrant was valid under the Fourth Amendment. Even if the Court determines that warrant was invalid, the government asserts that the good faith exception to the warrant requirement applies. At the suppression hearing, the government also argued that defendant lacks standing to challenge the search, because defendant has stipulated that he did not live at 1217 N. Rockford.

Validity of the Search Warrant

Defendant alleges that the warrant failed to satisfy the Fourth Amendment's particularity requirement, because it did not properly identify the resident of 1217 N. Rockford.[3] The government

---

[3]  Defendant cites Fed. R. Crim. P. 41(e)(2) to support his argument that the warrant failed to identify with particularity the place to be searched or the person or items to be seized. However, Rule 41 applies to warrants requested by a "federal law enforcement officer" and the warrant at issue was obtained by TPD. If evidence were suppressed, the Fourth Amendment would be the basis for suppression rather than Rule 41.

4

responds that police were executing a search warrant for a house rather than an arrest warrant for a particular person, and the warrant's description of the place to be searched and the items to be seized were sufficient. The warrant identified "1217 North Rockford Avenue" as the place to be searched for "marijuana, fruits, instrumentalities, monies, records and proof of residency." Dkt. # 18-2, at 37. The warrant was not an arrest warrant for the seizure of a particular person but, instead, it was a search warrant stating that TPD had probable cause to search a residence for drugs and related contraband.

Under the Fourth Amendment, a warrant must describe with particularity "the place to be searched . . . and the persons or things to be seized." U.S. CONST. amend. IV; United States v. Grubbs, 547 U.S. 90, 98 (2006). The particularity requirement ensures that police may not use a warrant to conduct a "general, exploratory rummaging in a person's belongings." United States v. Leary, 846 F.2d 592 (10th Cir. 1988) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). To satisfy the particularity requirement of the Fourth Amendment, a warrant must "enable the executing officer to locate and identify the premises with reasonable effort." Harman v. Pollock, 446 F.3d 1069, 1078 (10th Cir. 2006). A court should also consider whether "there is any reasonable probability that another premise might be mistakenly searched." Id.

In this case, the warrant provided a specific address and described the house in significant detail, and the warrant satisfied the particularity requirement of the Fourth Amendment. It does not appear that defendant is challenging the warrant's description of the property but, instead, defendant argues that the warrant did not sufficiently describe the resident of the house. Although defendant has stipulated that he had no ownership or proprietary interest in the house, this fact is irrelevant to the validity of the warrant under the Fourth Amendment. Defendant was not arrested pursuant to

5

the warrant because, at the time of the search, he was already under arrest for various traffic violations. The search warrant identified the place to be searched by address and physical description, and TPD officers searched the correct residence. In terms of the items to be seized, the warrant is also sufficiently particular. The warrant permitted police to seize marijuana, currency, and related drug paraphernalia and police seized all of these items. Although police also seized methamphetamine, they had the authority to seize "items which immediately appear[ed] to be evidence or contraband of a crime." United States v. Le, 173 F.3d 1258, 1269 (10th Cir. 1999). Therefore, the Court finds that the warrant's description of the place to be searched and the items to be seized satisfied the particularity requirement of the Fourth Amendment.

Even if the Court were to find the warrant invalid for lack of particularity, the Court finds that the good faith exception to the exclusionary rule would apply. The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). The Tenth Circuit has applied this exception narrowly and has limited its application to police searches based on a facially valid warrant or searches resulting from a police officer's reliance on a mistake made by someone other than the officer. United States v. Cos, 498 F.3d 1115, 1132 (10th Cir. 2007). The good faith exception does not apply if police improperly execute a warrant. United States v. Angelos, 433 F.3d 738 (10th Cir. 2006). In this case, police obtained a search warrant with evidence gathered from surveillance and a confidential informant and the warrant was facially valid. Even if the warrant were invalid for failing to properly identify the tenant or resident of the house, the police officers' reliance on the warrant was

objectively reasonable and they properly executed the search warrant. United States v. Rowland, 145 F.3d 1194, 1208 (10th Cir. 1998). The good faith exception applies and, even if the warrant were declared invalid, evidence seized during the search would not be suppressed.

Consent

Defendant claims that he did not voluntarily consent to a search of his cousin's residence. However, defendant's alleged lack of consent is irrelevant, because police had a warrant to search the subject residence. Police did not need consent to search the house at 1217 N. Rockford, because the warrant established that police had probable cause to conduct the search. Consent is an exception to the warrant requirement but, when police have a warrant, no exception to the warrant requirement is necessary. See United States v. Contreras, 506 F.3d 1031, 1036 (10th Cir. 2007). Even if defendant did not voluntarily consent to the search, this is not a basis to suppress evidence when police had a valid search warrant.

Standing

Defendant has stipulated that he did not live at the residence at 1217 N. Rockford Ave and, in fact, this appears to be the basis for his defense against the charges in the indictment. See Dkt. # 17, at 2 ("Another person lived in the 1217 N. Rockford residence -- not Mr. Gutierrez."); id. at 4 ("[TPD] Officers, however, accused Mr. Gutierrez of living in the 1217 address, and he told them he did not."); id. at 5 ("While Defendant Gutierrez had keys for the adjoining residence, he did not have authority or consent to open it for police."). "Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." United States v. Beckstead, 500 F.3d 1154, 1163 (10th Cir. 2007) (quoting United

States v. DeLuca, 269 F.3d 1128, 1131 (10th Cir. 2001)). "[A] threshold issue in deciding a motion to suppress evidence is whether the search at issue violated the rights of the particular defendant who seeks to exclude the evidence." United States v. Soto, 988 F.2d 1548 (10th Cir. 1993). To establish standing, defendant bears the burden to prove two elements: (1) defendant "exhibited an actual (subjective) expectation of privacy;" and (2) his "subjective expectation of privacy is one that society is prepared to recognize as reasonable." United States v. Dodds, 946 F.2d 726, 728 (10th Cir. 1991).

The government did not raise standing in its response to defendant's motion to suppress. Fourth Amendment standing is not jurisdictional, and the government may waive this argument by failing to raise it. United States v. Dewitt, 946 F.2d 1497, 1499-1500 (10th Cir. 1991). However, the government raised this issue at the suppression hearing and the Court finds that the government has not waived this argument. Based on defendant's stipulation that he did not live in the subject residence, it is clear that he lacks standing to challenge the search of the residence. Even if defendant had a right of access to the property, he must show that he had a legitimate expectation of privacy at his cousin's residence. See Minnesota v. Carter, 525 U.S. 83, 90 (1998) ("one who is merely present with the consent of the householder" lacks capacity to challenge a search under the Fourth Amendment); United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998) (the defendant was merely a "casual visitor" to the subject apartment and did not have a reasonable expectation of privacy); United States v. Cody, 434 F. Supp. 2d 157, 165 (S.D.N.Y. 2006) ("Overnight guests in a person's home share in hosts' expectation of privacy. Mere invitees do not."). He has failed to do so. Therefore, he has no Fourth Amendment right to challenge the search of the subject residence, and this is an alternate basis to deny his motion to suppress.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress Search of Residence and All Evidence Obtained From the Seizure (Dkt. # 17) is **denied**.

**DATED** this 1st day of April, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT